**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| CHARLES VAN MORGAN,<br><br>*Plaintiff*,<br><br>v.<br><br>MEMBERS OF THE TENNESSEE BOARD OF LAW EXAMINERS<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:26-cv-20<br><br>Judge Travis R. McDonough<br><br>Magistrate Judge Jill E. McCook |

---

**MEMORANDUM AND ORDER**

---

Before the Court is Defendant Members of the Tennessee Board of Law Examiners' (the "Members" or the "Board") second motion to dismiss (Doc. 26). For the following reasons, the Board's motion to dismiss will be **GRANTED**.

## I. BACKGROUND

In the Court's prior memorandum and order, it summarized the procedural history of this action and the allegations in Plaintiff Charles Van Morgan's prior complaints:

> Plaintiff Charles Van Morgan applied for admission to the Tennessee bar and for a license to practice law in Tennessee in 2016 and 2017. After a show-cause hearing in 2018, the Board denied him admission, finding that he failed to meet his burden of proof and "did not present evidence to the Board's satisfaction that he meets the applicable character and fitness standard for applicants to the Tennessee bar as set forth in § 6.01(a) of Rule 7 of the Tennessee Supreme Court's rule for licensing of attorneys." (Doc. 17-1, at 4.) Specifically, the Board found that Morgan "did not meet the standard of honesty, had not been candid with the Board, and was not likely to adhere to the duties and standards of conduct imposed on attorneys in this state." (*Id.* at 5.) In denying Morgan's application, the Board also determined that he was "not eligible to re-apply to the Bar of Tennessee for three years from the date of the order." (*Id.*)

Morgan reapplied for admission on December 1, 2023, and achieved a passing score on the July 2024 Tennessee bar examination. (*Id.*) Citing "substantial doubts concerning [Morgan's] character and fitness," the Board issued another show-cause order on November 1, 2024, and, on February 7, 2025, it issued a memorandum opinion resolving its show-cause order. (*Id.*) As further detailed in the Board's memorandum opinion, it noted the following concerns about Morgan's character and fitness: (1) concerns about Morgan's candor and honesty as it relates to the previous denial of his application for admission in 2019, including not being forthcoming about facts leading to his termination by the Tennessee Highway Patrol; and (2) concerns about Morgan's character and fitness to practice based on his conduct during and after certain legal proceedings, including, but not limited to, an order of protection entered against him for alleged threats he made to his sister, his subsequent filing of a complaint with the Board of Judicial Conduct against the trial judge who entered the protection order, his distribution of fliers and social media posts making derogatory comments about judges and the judicial system in Tennessee, his arrest at a polling place for allegedly harassing voters entering the polls. (*Id.* at 6–10.) After receiving evidence and hearing argument at a show-cause hearing, the Board found, among other things, that: (1) the evidence presented did not diminish its "substantial doubts" relating to Morgan's candor in connection with his prior application for admission to practice in 2019; (2) through his conduct, Morgan "impugned the integrity of the current show cause proceeding"; (3) Morgan's testimony did not allay the Board's concerns about his complaint with the Board of Judicial Conduct against the trial judge who entered the order of protection against him; (4) Morgan failed to offer an explanation that would mitigate concerns about his use of threats of violence and intimidation as means to advance his position in the event of conflict"; and (5) Morgan offered no satisfying explanation for his factually unfounded criticisms of judges as corrupt. (*Id.* at 10–14.) Based on these findings, the Board concluded that "several of these matters individually provide a basis for denying a law license to Mr. Morgan," and "[c]ollectively they raise more than substantial doubts concerning his character, reputation, due respect for the law, and respect for the rights of others." (*Id*. at 14.) As a result, the Board again denied his application for a license to practice law based on his failure to demonstrate compliance with the applicable character-and-fitness standard and prohibited him "from applying for admission in Tennessee as provided in Tennessee Supreme Court Rule 7., § 9.07." (*Id.*)

Morgan initiated this action on January 16, 2026, filing a complaint against the Board. (Doc. 1.) In his initial complaint, he alleged that the Board violated his rights under the First and Fourteenth Amendments of the United States Constitution and asserted claims against it pursuant to 42 U.S.C. § 1983. (*Id.* at 3–4.) Specifically, Morgan's complaint alleged that, although he passed the Tennessee bar examination, the Board denied his application for admission to the Tennessee Bar and imposed a permanent bar on reapplication pursuant to Tennessee Supreme Court Rule 7, § 9.07, basing its decision on his protected speech, including public criticism of judges and the judicial system. (*See id.*)

> On January 20, 2026, Morgan filed an amended complaint, in which he clarified that, under applicable rules, he is only barred from reapplying for admission for three years. (Doc. 7.) He further alleges that, in reaching its decision to deny him admission to the Tennessee Bar, the Board "relied in substantial part on [his] protected speech, including [his] public criticism of judges and the judicial system, and expressly cited [his] statements and testimony in which he criticized and 'attacked' the Board and the judiciary." (*Id.* at 3.) Based on his allegations, Morgan's amended complaint asserts claims pursuant to 42 U.S.C. § 1983 against the Board for First Amendment retaliation and violation of his procedural due process rights under the Fourteenth Amendment. (*Id.* at 3–4.)
>
> On March 13, 2026, the Board moved to dismiss Morgan's claims against it, arguing that the Court lacks subject-matter jurisdiction, the *Rooker-Feldman* doctrine prevents federal district court review, he lacks standing, the Eleventh Amendment immunizes the Board from suit, and he fails to state a claim upon which relief can be granted. (Doc. 14.) After the Board moved to dismiss Morgan's amended complaint, he filed a motion for leave to amend his complaint. (Doc. 19.) In moving to amend his complaint, however, Morgan failed to comply with the Court's local rule requiring him to attach a copy of the proposed amended complaint to his motion. *See* E.D. Tenn. L.R. 15.1. After the Board responded in opposition to the motion to amend, Morgan filed a reply and attached a copy of his proposed second amended complaint. (*See* Docs. 23, 23-1.)

(Doc. 24, at 1–4.) On May 6, 2026, the Court granted Morgan's motion for leave to file a second amended complaint (*id.*), which he filed on May 13, 2026 (Doc. 25).

In his second amended complaint, Morgan seeks to assert claims against "the individual members of the Tennessee Board of Law Examiners . . . in their official capacities only."[1] (Doc. 25, at 2.) Morgan notes that Tennessee Supreme Court Rule 7, § 6.01 precludes admission to the Tennessee bar if the Board finds reasonable doubt as to the "reputation, character, honesty, respect for the rights of others, fitness to practice law, and adherence to the Constitution and laws of Tennessee and the United States." (*Id.* at 3.) Morgan further notes that Rule 7, § 9.07 provides that an applicant denied admission based in whole or in part on failure to demonstrate compliance with the character-and-fitness requirement in § 6.01 is prohibited from reapplying

[1] Morgan, however, has not identified or served the individual members of the Tennessee Board of Bar Examiners.

for admission for three years. (*Id.*) Morgan asserts that these rules are constitutionally defective because they do not limit the Board's discretion "to consider constitutionally protected, expressive, petitioning, or court-related activity as negative character evidence," and because the rules "lack[] any objective standard governing rehabilitation determinations for repeat applicants." (*Id.*) Morgan's second amended complaint further clarifies that he "does not seek review, reversal, or modification of any individual bar decision," but "challenges the structure of Rule 7 itself: its failure to provide limiting principles preventing the Board from conditioning licensure on constitutionally protected expressive and petitioning activity, and its failure to provide objective, ascertainable standards governing rehabilitation determinations for repeat applicants." (*Id*. at 1–2.) Morgan's amended complaint also states that the relief he seeks is "prospective declaratory and injunctive relief directed at the rules' ongoing enforcement." (*Id*. at 2.) Based on the allegations in his second amendment complaint, Morgan seeks to assert facial constitutional challenges to Rules §§ 6.01 and 9.07 as violative of the First and Fourteenth Amendments. (*Id.* at 5–7.) As to his requested relief, Morgan's second amended complaint seeks: (1) "a declaratory judgment that Rule 7 § 6.01 is unconstitutional on its face under the First Amendment and prospective injunctive relief prohibiting enforcement of the three-year reapplication bar to the extent it flows from the unconstitutional application of that standard"; (2) "a declaratory judgment that Rule 7 §§ 6.01 and 9.07 are unconstitutional on their face under the Fourteenth Amendment as applied to repeat applicants, and prospective injunctive relief prohibiting ongoing enforcement of the three-year reapplication bar imposed pursuant to those provisions"; and (3) a preliminary and permanent injunction prohibiting future enforcement of Rule 7 § 9.07 against [him] pending adjudication of the constitutional claims asserted." (*Id.* at 6–8.)

The Members have filed a motion to dismiss Morgan's claims against them, arguing that the Court does not have subject-matter jurisdiction and that his second amended complaint fails to state a claim upon which the Court can grant relief. (*See* Docs. 26, 27.) The Members's motion is now ripe for the Court's review.

## II. SUBJECT-MATTER JURISDICTION

The Members first argue that the Court does not have subject-matter jurisdiction over Morgan's claims because his claims are not ripe, he lacks standing, and his action is barred by the doctrine of sovereign immunity. (Doc. 27, at 5–10.)

### A. Standard of Law

A complaint may be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). "A facial attack is a challenge to the sufficiency of the pleading itself" and "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235–37 (1974)). "A factual attack, on the other hand, is . . . a challenge to the factual existence of subject matter jurisdiction." *Id.* at 598. The plaintiff bears the burden of proving jurisdiction exists. *Golden*, 410 F.3d at 881; *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

### B. Analysis

#### *i. Standing and Ripeness*

The Members first argue that Morgan does not have standing and his challenges to the facial validity of Tennessee's bar-admission rules are not ripe because he does not have an application for admission to the bar currently pending and, thus, has not suffered an injury to warrant the prospective relief he seeks. (Doc. 27, at 5–6.)

The case-or-controversy requirement of Article III, Section 2, mandates that a plaintiff have standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To have standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Daunt v. Benson*, 956 F.3d 396, 417 (6th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, (2016)). An injury, for standing purposes, means the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent.'" *Id.* (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). A "concrete" injury in fact does not have to be tangible, but it must be "'real,' and not 'abstract.'" *See id.* at 340. The plaintiff bears the burden of showing that standing exists. *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to establish standing. *Lujan*, 504 U.S. at 561.

Standing and ripeness "'originate from the same Article III limitation' and may be analyzed together as part of 'standing'" because the inquiries often overlap. *Platt v. Bd. of*

*Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d, 447, 451 (6th Cir. 2014). Ripeness is a justiciability doctrine designed "to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Ky. Press Ass'n v. Kentucky*, 454 F.3d 505, 509 (6th Cir. 2006) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). "Ripeness becomes an issue when a case is anchored in future events that may not occur as anticipated, or at all." *Id.* (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997)). Courts ask two questions to determine whether a claim is ripe for judicial review: "(1) is the claim 'fit[] . . . for judicial decision' in the sense that it arises in a concrete factual context and concerns a dispute that is likely to come to pass? and (2) what is 'the hardship to the parties of withholding court consideration'?" *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (alterations in original) (citations omitted).

*Lawrence v. Welch* is instructive as to the ripeness, at least to the extent Morgan claims that the Court should enjoin the Board from considering his protected speech in connection with any future application for admission to the Bar. In *Lawrence*, an attorney who was denied admission to the Michigan bar filed an action seeking, among other things, prospective relief prohibiting the defendants from using his protected First Amendment activities as a basis for denying his future applications for a Michigan law license. 531 F.3d 364, 367 (6th Cir. 2008). In affirming the district court's dismissal of the plaintiff's claims, the Sixth Circuit held that his claims for prospective relief related to future applications were not ripe.[2] The Sixth Circuit explained that it did not know: (1) whether the plaintiff would file another bar application; (2) what the plaintiff would say in completing a future application; (3) how he would respond to

[2] As *Lawrence* notes, the concurrence constitutes the majority opinion on the issue of ripeness. 531 F.3d at 373–74, n.1.

questioning at a character-and-fitness hearing; (4) whether the board would grant or deny his future application; and (5) if it denied his application, why it chose to do so. *Id*. at 373–74. The court of appeals reasoned that, without these "concrete facts," any resolution of the plaintiff's claim and "even the assumption that [he] will be injured," is "necessarily premature." *Id*. The court of appeals further explained that the plaintiff would not suffer any hardship by waiting until he files a second application before seeking to vindicate his first amendment rights. *Id*.

In this case, Morgan's First Amendment and Fourteenth Amendment claims are not ripe, at least to the extent he seeks any relief related to future applications for admission to the bar. Like the plaintiff bar applicant in *Lawrence*, the Court does not know, among other things, what Morgan would say in completing a future application, how he would respond to questioning at a character-and-fitness hearing, whether the Board will grant or deny any future application, or if the Board denies his application, its basis for doing so. *See Lawrence*, 531 F.3d at 373–74. Without these concrete facts, the assumption that Morgan will be injured as it relates to a future application is speculative and premature. Accordingly, Morgan's constitutional claims are not ripe, and he does not have standing, at least to the extent he seeks relief in connection with a future anticipated application for admission to the Tennessee bar.

Morgan, however, may have standing and his claims may be ripe to the extent he contends that Tennessee Supreme Court Rule 7, §§ 6.01 and 9.07 are facially invalid and to the extent he seeks prospective injunctive and declaratory relief, especially as it relates to the three-year reapplication ban imposed by the Board. Morgan alleges that he is injured by Tennessee's three-year reapplication rule, that the three-year reapplication rule is facially unconstitutional, and that declaratory and injunctive relief finding that the three-year reapplication rule is unconstitutional will allow him to immediately reapply for admission to the Tennessee bar.

Although such allegations may be sufficient to confer Article III standing, the Court need not definitively resolve the standing issue because, as explained below, Morgan's amended complaint fails to state a claim upon which relief can be granted.

***ii. Sovereign Immunity***

Pursuant to the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Courts have interpreted the Eleventh Amendment as conveying sovereign immunity to states and, in some cases, their officials. *See Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017). Nonetheless, under *Ex parte Young*, "the Eleventh Amendment does not bar a lawsuit seeking an injunction against a state official prohibiting the state official from enforcing a state statute that allegedly violates the United States Constitution" or otherwise violating federal law. *Dubuc v. Mich. Bd. of L. Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003). To determine whether *Ex parte Young* applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (alteration in original) (quoting *Idaho v. Couer d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)).

To the extent (1) Morgan has collectively sued the "individual members" of the Board, (2) his amended complaint asserts an ongoing violation of his constitutional rights, and (3) the relief he seeks is prospective declaratory and injunctive relief, the individual members of the Board are not entitled to immunity under the Eleventh Amendment. *See Dubac*, 342 F.3d at 616–17 (holding that the Michigan Board of Law Examiners was entitled to Eleventh

Amendment immunity, but that individual members of the board were not entitled to immunity against injunctive and declaratory relief to the extent the plaintiff bar applicant alleged that Michigan's bar admission rules, facially and as applied, violated the United States Constitution).

Nonetheless, even if individual members of the Board are not entitled to Eleventh Amendment immunity, Morgan's amended complaint does not identify the individual members of the Board, and it does not appear that he has served any individual members of the Board with process. Morgan has not identified, and the Court's independent research has not revealed any authority, excusing Morgan from serving the individual members of the Board with process as it relates to his claims for ongoing violations of his constitutional rights and prospective declaratory and injunctive relief. And, although the Court could permit Morgan to amend his complaint to name individual Board members and provide him with time to effectuate service of process, doing so is unnecessary because, as explained below, he has failed to state a claim upon which relief can be granted.

## III. FAILURE TO STATE A CLAIM

### A. Standard of Law

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion

pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id*. at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986). After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Analysis**

***i. First Amendment***

In his amended complaint, Morgan asserts that Tennessee Supreme Court Rule 7, § 6.01 facially violates the First Amendment because it provides the Board with "unbounded discretion to condition bar admission on the content of an applicant's expressive and petitioning activity

without providing any limiting principles ensuring that constitutionally protected conduct is excluded from the character-and-fitness calculus." (Doc. 25, at 5.)

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Normally, litigants asserting a facial challenge to a statute "must establish that *no set of circumstances* exist under which the statute would be valid." *United States v. Hansen*, 599 U.S. 762, 769 (2023) (emphasis in original). Nonetheless, "the overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied." *Id*. "If the challenger demonstrates that the statute "prohibits a substantial amount of protected speech" relative to its plainly legitimate sweep, then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid." *Id*. at 770 (citation modified). In making this determination, courts must assess the state law's scope, identifying what activities and by what actors the laws prohibit or otherwise regulate, and then, it must determine if the law's unconstitutional applications "substantially outweigh its constitutional ones." *Moody v. NetChoice, LLC*, 603 U.S. 707, 724 (2024). The Supreme Court cautions, however, that facial invalidation for overbreadth is "strong medicine that is not to be casually employed." *Hansen*, 599 U.S. at 769 (citation modified). As a result, to "justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *Id*. Otherwise, "in the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case." *Id*.

In this case, Morgan has not plausibly alleged that Tennessee's character-and-fitness rule prohibits a substantial amount of protected speech relative to its plainly legitimate sweep or that

unconstitutional applications of the character-and-fitness rule substantially outweigh constitutional applications. Tennessee Supreme Court Rule 7, § 6.01(a) provides:

> An applicant shall not be admitted if the Board finds reasonable doubt as to that applicant's reputation, character, honesty, respect for the rights of others, fitness to practice law, and adherence to and obedience to the Constitution and laws of Tennessee and the United States and concludes that such applicant is not likely to adhere to the duties and standards of conduct imposed on attorneys in this State.

Although there may be circumstances in which the Board considers constitutionally protected speech is considered in assessing an applicant's "reputation, character, honesty, respect for the rights of others, fitness to practice law, and adherence to and obedience to the Constitution and laws of Tennessee and the United States," there is nothing in the language of the rule suggesting a reasonable danger that the rule will significantly compromise recognized First Amendment protections of parties not before the Court. Moreover, the rule is content neutral and does not target expressive activity; rather, it assesses qualities such as honesty, reliability, and respect for the law. That Morgan can envision a scenario in which there is an unconstitutional application alone is not sufficient to state a claim for an overbreadth challenge. As a result, even viewing the allegations in Morgan's complaint in the light most favorable to him, his amended complaint fails to allege facts plausibly suggesting that Rule 7, § 6.01 is overbroad and facially unconstitutional. Accordingly, the Court will grant the Board's motion to dismiss Morgan's claim that Rule 7, § 6.01 is facially unconstitutional under the First Amendment.

***ii. Fourteenth Amendment***

Morgan also alleges that Rule 7, §§ 6.01 and 9.07 are facially unconstitutional under the procedural due process clause of the Fourteenth Amendment with respect to repeat bar applicants because the rules "fail to provide sufficiently definite standards governing what constitutes adequate rehabilitation following a prior denial" and there is a "cognizable liberty interest under the stigma-plus doctrine." (Doc. 25, at 7.)

States may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This clause has a procedural component, which "is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property." *EJS Props., LLC v. City of Toledo,* 698 F.3d 845, 855 (6th Cir.2012) (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 125 (1992)). To state a procedural due process claim, a plaintiff must allege that: (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights. *See Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014).

As it relates to liberty and property interests subject to protection under the Due Process Clause, this Court has previously explained:

> A property interest can only be "created" and "defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bright v. Gallia Cnty.*, 753 F.3d 639, 656 (6th Cir. 2014) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). An "abstract need," a "desire," or a "unilateral expectation" does not create a property interest. *Roth*, 408 U.S. at 577. Rather, to create a property interest, "the state law must create a legitimate entitlement to a benefit or a justifiable expectation of receiving it." *Williams v. City of Detroit*, 54 F.4th 895, 899 (6th Cir. 2022) (citations omitted).
>
> On the other hand, a liberty interest can arise from one of two sources. First, like a property interest, a state law can create a liberty interest. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Second, the Due Process Clause itself can also create a liberty interest. *Id.* The Due Process Clause's definition of "liberty" in procedural-due-process contexts is narrower than its definition of a "fundamental right" in substantive-due-process contexts. *See Memphis A. Phillip Randolph Inst. v. Hargett*, 482 F. Supp. 3d 676, 687–88 (M.D. Tenn. 2020) ("The Court well understands that the constitutional *right* to vote is 'fundamental.' But that does *not* mean that this right is a '*liberty interest*' cognizable under the Due Process Clause of the Fourteenth Amendment for the purposes of a procedural due process claim.") (citing *Sandin v. Connor*, 515 U.S. 472, 484 (1995)); *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 479 (6th Cir. 2008) (holding that a challenged voting system "impinge[d] on the fundamental right to vote" under substantive due process but that the fundamental right did not support the

> existence of liberty for the purposes of a procedural due process claim). Like a property interest, a liberty interest is not unlimited and must be based on something more than "a unilateral hope." *Myers v. Delaware Cnty, Ohio*, No. 2:07-cv-844, 2008 WL 4862512, at *5 (S.D. Ohio Nov. 7, 2008) (quoting *Ky. Dep't of Corr.*, 490 U.S. at 460). While a liberty interest includes "some generalized due process right to choose one's field of private employment," such a right is "subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999) (citations omitted). But the government cannot institute "a complete prohibition of the right to engage in a calling." *Id.* at 292.
>
> A future expectation cannot establish a property interest, nor can it establish a liberty interest. *See Roth*, 408 U.S. at 576 ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has *already acquired* in specific benefits.") (emphasis added); *Myers*, 2008 WL 4862512 ("The alleged right to obtain a private investigator's license . . . *at some time in the future*, however, is not a protected property interest."). Likewise, "a benefit is not a protected entitlement if the governmental office may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 759 (2005) (citing *Ky. Dep't of Corrs.*, 490 U.S. at 462–63).

*Langer v. Individual Members of Tenn. Bd. of L. Examiners*, No. 3:22-CV-449, 2023 WL 12218667, at *5–6 (E.D. Tenn. Aug. 3, 2023). Consistent with this rationale, the Court has concluded that a bar applicant does not have a protected property or liberty interest in a potential law license. *Id.*; *see also Hornbeck v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 545 S.W.3d 386, 396 (Tenn. 2018) ("[A] license to practice law in this state is not a right, but a privilege.").

In this case, Morgan fails to state a claim that Tennessee's character-and-fitness rule and its three-year reapplication ban facially violate procedural due process rights under the Fourteenth Amendment because he has not pled that he was deprived (or will be deprived) of a constitutionally protected liberty or property interest. Morgan does not have a constitutionally protected interest in a potential law license, and his allegations regarding damage to his reputational harm do nothing to alter this conclusion. As the Sixth Circuit has explained, to maintain a "stigma-plus" procedural due process claim, a plaintiff must allege "injury to one's reputation (the stigma) coupled with the deprivation of some tangible interest [e.g., the loss of government employment] or property right (the plus), without adequate process." *Printup v.*

*Director, Ohio Dep't of Job & Family Servs.*, 654 F. App'x 781, 785 (6th Cir. 2016); *see also Paul v. Davis*, 424 U.S. 693, 694–95 (1976) (holding that plaintiff failed to bring a colorable § 1983 claim against police officers who had distributed flyers identifying him as an "active shoplifter" where plaintiff had suffered reputational harm (stigma) from the officers' actions but had not suffered a corresponding loss of a liberty or property interest (plus)). Morgan has not alleged the deprivation of a constitutionally protected liberty or property interest, and, therefore, his amended complaint fails to state a claim for violation of procedural due process rights. Accordingly, the Court will grant the Board's motion to dismiss Morgan's claim that Rule 7, §§ 6.01 and 9.07 are facially unconstitutional under the Fourteenth Amendment.

## IV. CONCLUSION

For the reasons stated herein, the Members' motion to dismiss (Doc. 26) is **GRANTED**, and Morgan's claims will be **DISMISSED WITH PREJUDICE**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

**/s/ *Travis R. McDonough***
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**